Opinion issued June 16, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00064-CR

———————————

Gervin Odir BenItes-Vijil, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 183rd District Court 

Harris County, Texas



Trial Court Case No. 1187656

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Gervin Odir Benites-Vijil of aggravated assault of a
public servant and assessed punishment at 45 years in prison.  See
Tex. Penal Code Ann. §§ 22.01–.02 (West Supp. 2010).  In three issues on appeal Benites-Vijil
argues that the evidence was legally and factually insufficient to support his
conviction and that the trial court abused its discretion in admitting evidence
of an extraneous offense.  We affirm.

Background

          On
October 14, 2008, Officer R. Wilson of the Houston Police Department was
dispatched to an apartment complex in southwest Houston in response to a
reported aggravated robbery with a deadly weapon.  When she arrived at the scene, she identified
Mr. Ochoa, the alleged robbery victim, who did not speak any English.  H. Tabares and L. Tabares, two bystanders who
had witnessed the robbery, offered to translate.  Ochoa described his attacker, who was later
identified as Benites-Vijil, as a Hispanic male with a thin build and curly
hair, who was wearing a white-and-red striped shirt and blue jeans.  The bystanders also provided a description of
the attacker and described the weapon he used as a black gun.  Both Ochoa and the bystander witnesses told
Wilson that Benites-Vijil was headed north.

          Wilson
returned to her vehicle, called for back-up, and put out a general broadcast
over police radio for units in the area to be on the lookout for a possible
suspect matching the description.  She
drove north in search of the suspect.  A
group of men standing in front of a nearby convenience store flagged her down
and pointed out Benites-Vijil, who was walking back toward the apartment
complex carrying a 12-pack of beer. 
Wilson called in her position, got out of her vehicle, and followed Benites-Vijil
on foot.  She testified that
Benites-Vijil turned around, saw her following him, and took off running.  Wilson chased him.  Benites-Vijil ran into the apartment complex
through a pedestrian gate and dropped his beer. 
Wilson testified that she saw him “fiddling . . . with his
waistband.”  Believing he was armed,
Wilson drew her weapon and commanded him to stop and put his hands in the
air.  But Benites-Vijil ran through the
apartment complex.  Wilson testified that
in a breezeway between two apartment buildings, Benites-Vijil pulled a black
gun from his waistband, turned around, and began shooting at her.  Wilson returned fire.  She testified that Benites-Vijil fired
approximately four rounds.  During the
exchange, Benites-Vijil tripped and fell, but before Wilson could apprehend
him, he got up and ran away.  Wilson
testified that Benites-Vijil gained a tactical advantage over her when he ran
around a utility building and out of her sight. 
She took cover and waited for back-up to arrive.  

          Within
minutes of Wilson’s radio dispatch, Officers A. Castillo and
V. Gonzalez arrived separately at the apartment complex.  Castillo was the first to spot Benites-Vijil
walking toward a parking lot.  He
testified that Benites-Vijil spotted him, turned around, and ran in the
opposite direction.  Castillo chased him
through the complex but was unable to catch him.

When Gonzalez arrived, several
bystanders directed him to where Benites-Vijil was last seen, wearing blue
jeans and no shirt.  Gonzalez and two
other officers initially detained a person matching the description of Wilson’s
attacker but were told by onlookers that they had the wrong person.  Gonzalez testified that he approached another
group of people and asked if anyone had seen a Hispanic man walking around
wearing blue jeans and no shirt.  One
bystander indicated that Benites-Vijil was sitting to the right of the
group.  Gonzalez arrested him.

Gonzalez searched Benites-Vijil for
weapons but did not find any firearms.  He
located a white and red striped shirt hidden under a car, and a bullet was
recovered from the pocket of Benites-Vijil’s blue jeans.  Wilson identified Benites-Vijil as the person
who shot at her and the shirt as the one he wore during the attack.

After Benites-Vijil was in custody,
H. Tabares, an eyewitness to the robbery, approached the investigating officers
and identified Benites-Vijil as the person who had committed the robbery.  Over defense counsel’s objection, H. Tabares
testified that Benites-Vijil was the man he had described to Wilson.  Tabares’s daughter, L. Tabares, similarly
testified that Benites-Vijil was the man she had seen robbing Ochoa in the
parking lot of the apartment complex. 
She described his clothing to Wilson and testified that the clothing
collected at the scene was the clothing she saw Benites-Vijil wearing during
the robbery.  Behind some bicycles on her
neighbor’s porch, L. Tabares found a gun that looked like the one used
during the robbery.

Officers M. Perez and D. Nunez of
the crime scene unit collected shell casings from the scene.  They recovered a 9-mm unfired cartridge in
the bushes near the place that Wilson testified she saw Benites-Vijil fall
during the fire fight.  Perez also
collected a 9-mm Ruger pistol.  Nunez
tested Benites-Vijil’s hands for gunshot residue.  The physical evidence was taken to the Harris
County Medical Examiner’s office, as well as to the forensic firearms
laboratory.

S. Houck analyzed the gunshot
residue samples collected at the scene. 
He testified that he did not find particles consistent with the
composition characteristics of gunshot residue, but he did find individual
elements of lead, barium, and antimony particles.  He testified that the presence of these
individual elements was some evidence that Benites-Vijil had fired a gun.

A ballistics analyst from the
Houston Police Department forensic firearms laboratory received the firearms
and ballistics evidence collected at the scene. 
He testified that Wilson’s 22-mm Glock, a number of 22-mm shell casings
and bullets, a 9-mm Ruger, and eleven 9-mm cartridges were submitted to his
lab.  None of the recovered 9-mm
cartridges had been fired from the 9-mm gun found at the scene, but based on a
comparison of the gun and the markings on the cartridges, he concluded that the
cartridges recovered from the breezeway and the pocket of Benites-Vijil’s pants
had been chambered in the 9-mm gun.

The jury convicted Benites-Vijil of
aggravated assault on a public servant and assessed punishment at forty-five
years’ imprisonment.  Benites-Vijil filed
a timely notice of appeal.

Analysis

I.                 
Sufficiency of the
evidence

          In his first and second
issues, Benites-Vijil challenges the legal and factual sufficiency of the
evidence to support his conviction.  He
argues specifically that the State failed to present sufficient evidence that
he possessed a firearm and that there was no forensic evidence connecting the handgun to the cartridges collected at
the scene.  Benites-Vijil does not
present separate arguments to support his claims of legal and factual
sufficiency.  In light of the decision in
Brooks v. State, 323 S.W.3d 893 (Tex.
Crim. App. 2010), we likewise will review the sufficiency of the evidence in a
unified analysis.

We review the sufficiency of evidence to support a criminal conviction to
determine “whether, after viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Brooks
v. State, 323 S.W.3d 893,
894–95 (plurality op.), 926 (Cochran, J.,
concurring) (Tex. Crim. App. 2010). 
Evidence is insufficient under this standard when: (1) the record
contains no evidence, or merely a “modicum” of evidence, probative of an
element of the offense; or (2) the evidence conclusively establishes a
reasonable doubt.  See Jackson, 443 U.S. at 314, 318, 320, 99 S.
Ct. at 2786. 
We presume that the fact finder resolved any conflicting inferences in
favor of the verdict and defer to that resolution.  See id. at 326, 99 S.
Ct. at 2793; Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  On appeal we may not re-evaluate the weight
and credibility of the record evidence and thereby substitute our own judgment
for that of the fact finder.  Williams
v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  The jury is the exclusive judge of the facts.  Tex.
Code Crim. Proc. Ann. arts. 36.13, 38.04 (West 2007 &
1979); Brooks, 323
S.W.3d at 899.  Because “[t]he jury is in the best position to
judge the credibility of a witness,” we “afford almost
complete deference to a jury’s decision when
that decision is based upon an evaluation of credibility.”  Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim.
App. 2008).

A person
commits aggravated assault if he intentionally or knowingly threatens another
with imminent bodily injury and uses or exhibits a deadly weapon
during the commission of the assault.  Tex. Penal Code
Ann. §§ 22.01(a)(2), 22.02(a)(2).  An offense under
section 22.02 is a first degree felony if it is committed against a person the
defendant knows is a public servant while the public servant is lawfully
discharging an official duty.  Id.
§ 22.02(b)(2)(B).

In this
case, Benites-Vijil was charged with “unlawfully, intentionally and knowingly
threaten[ing] [Wilson] with imminent bodily injury . . . while [she] was
lawfully discharging an official duty, by using and exhibiting a deadly weapon,
namely a firearm . . . .”  He argues that the evidence
at trial was insufficient because he was not in possession of a firearm at the
time of his arrest and the forensic evidence did not conclusively link the 9-mm
cartridges found in the breezeway and in the pocket of his jeans to the 9-mm
handgun collected at the scene.  But
Wilson positively identified Benites-Vijil at the scene and at trial as the man
who threatened her.  She testified that
she saw Benites-Vijil pull a gun out of the waistband of his pants, point it at
her, and fire four rounds in her direction. 
Her testimony alone is sufficient to support the jury’s verdict.  See,
e.g., Aguilar v. State, 468
S.W.2d 75, 77 (Tex. Crim. App. 1971) (holding testimony of eyewitness alone
sufficient to support conviction); Davis
v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.)
(same).

Wilson’s testimony is corroborated by the
physical and forensic evidence.  Officers
Perez and Nunez testified that a 9-mm cartridge was recovered in the breezeway
near where Wilson indicated Benites-Vijil fell down during the shooting.  The ballistics analyst testified that marking
on the cartridge found on the ground, as well as the one found in the pocket of
Benites-Vijil’s pants indicated that they were both chambered in the 9-mm
handgun found at the scene.  Houlck, who
analyzed the trace evidence submitted by the investigating officers, testified
that he identified individual elements of lead, barium, and antimony
particles in the  samples collected from
Benites-Vijil’s hands.  Although he did
not find gunshot residue on the samples, he testified that the presence of
these individual elements was some evidence that Benites-Vijil had fired a
gun.  Considering all of the evidence in
the light most favorable to the prosecution, we hold that the State presented
sufficient evidence to support the jury’s verdict.  See  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Brooks, 323 S.W.3d at  894–95 (plurality op.), 926 (Cochran, J., concurring).  We overrule Benites-Vijil’s first
and second issues.

II.              
Admissibility of extraneous offense evidence

In his third issue, Benites-Vijil complains
that the trial court erred in admitting testimony concerning the aggravated
robbery that occurred immediately prior to the aggravated assault on
Wilson.  Over defense counsel’s objection,
the trial court admitted evidence of the aggravated robbery subject to a
limiting instruction.  Benites-Vijil
argues that the testimony of Wilson, H. Tabares, and L. Tabares regarding the
robbery investigation was inadmissible character evidence.  Alternatively, he argues that the trial court
abused its discretion in admitting the testimony because its probative value
was substantially outweighed by the danger of unfair prejudice.

We review the trial court’s decision to admit extraneous offense evidence for abuse of discretion.  Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996); Roberts v.
State, 29 S.W.3d 596, 600
(Tex. App.—Houston [1st Dist.] 2000, pet. ref’d).  A trial court does not abuse its discretion as long as its decision to admit evidence is
within the “zone of reasonable disagreement.” 
Montgomery v. State,
810 S.W.2d 372, 391–92 (Tex. Crim. App. 1990); Roberts, 29 S.W.3d at 600.  We will sustain
the decision if it is correct on any theory of law applicable to the case.  Romero v. State, 800 S.W.2d
539, 543–44 (Tex. Crim. App. 1990).

Evidence of extraneous offenses is not
admissible at the guilt-innocence phase of a trial to prove that a defendant committed the charged
offense in conformity with a bad character. 
Tex. R. Evid. 404(b); see
Nobles v. State, 843 S.W.2d
503, 514 (Tex. Crim. App. 1992).  Extraneous offense evidence may be admissible, however,
when it has relevance beyond character conformity, for example, to show proof
of motive, opportunity, intent, preparation, plan, knowledge, identity,
or absence of mistake or accident.  Moses
v. State, 105 S.W.3d 622,
626 (Tex. Crim. App. 2003).  Contextual
evidence is admissible under Rule 404(b) when it is part of the same
transaction, particularly when “several crimes are intermixed, or blended with
one another, or connected so that they form an indivisible criminal transaction.”  Rogers
v. State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993); Garcia v. State, 17 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.]
1999, pet. ref’d).  “Only if the facts
and circumstances of the instant offense would make little or no sense without
also bringing in the same transaction contextual evidence, should the same
transaction contextual evidence be admitted.” 
Rogers, 853 S.W.2d at 33.

Benites-Vijil argues that the testimony regarding that prior
assault was inadmissible character evidence, but the State argued at the
pretrial hearing and on appeal that the testimony of all three witnesses
provides necessary context.  On appeal,
the State also argues that the evidence demonstrates motive.  The trial court ruled that testimony
regarding the prior aggravated assault was admissible subject to a limiting
instruction.  The trial court instructed
the jury, as follows:

You are further instructed that if
there is any evidence before you in this case regarding the defendant’s
committing an alleged offense other than the offense alleged against him in the
indictment in this case, you cannot consider such evidence for any purpose
unless you find and believe beyond a reasonable doubt that the defendant
committed such other offense or offenses, if any, and even then you may only
consider the same in determining the motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident of the defendant,
if any, in connection with the offense, if any, alleged against him in the
indictment and for no other purpose.

 

H. Tabares and L. Tabares both described Benites-Vijil’s
clothing, the weapon he was carrying, and the direction in which he was
heading.  Wilson’s testimony regarding
the prior aggravated assault explains her presence at the apartment complex and
her rationale for following Benites-Vijil, who matched the Tabareses’
description.  L. Tabares also led the
investigating officers to the gun Benites-Vijil used in both the aggravated
robbery and the assault on Wilson.  She
testified that the gun found after the assault on Wilson looked similar to the
one she saw Benites-Vijil holding during the robbery.  Because we conclude that this evidence
provides necessary context and demonstrates Benites-Vijil’s motive for shooting
at Wilson, we hold that the trial court did not abuse its discretion in
admitting the evidence under an exception to Rule 404(b).  See
Moreno v. State, 721 S.W.2d 295, 301
(Tex. Crim. App. 1986); Garcia, 17
S.W.3d at 6–7.

Evidence admissible under Rule 404(b) may still be excluded
if the danger of unfair prejudice substantially outweighs the probative value
of the evidence.  See Tex. R. Evid. 403.  In evaluating whether evidence is
admissible under Rule 403, we consider several factors: (1) how
compellingly evidence of the extraneous misconduct serves to make more or less
probable a fact of consequence; (2) the potential for the evidence of an
extraneous offence to impress the jury in some irrational but indelible way,
(3) the time needed to develop the evidence of the extraneous offense, and
(4) the proponent’s need for the extraneous offense.  Jabari v.
State, 273 S.W.3d 745, 752–53 (Tex. App.—Houston [1st Dist.] 2008, no pet.)
(citing Lane v. State, 933 S.W.2d 504,
520 (Tex. Crim. App. 1996)).  We will
uphold the trial court’s ruling if it is within the zone of reasonable
disagreement.  Lane, 933 S.W.2d at 520; Jabari,
273 S.W.3d at 753.

In this case, the proximity in time and Wilson’s ongoing
investigation of the aggravated robbery make her testimony and that of the
Tabareses highly probative. 
Collectively, their testimony demonstrates Benites-Vijil’s identity,
motive, and intent.  Given that the gun
was not found on his person and that the crime scene investigators did not find
any used 9-mm cartridges, the State needed the testimony to establish that
Benites-Vijil had previously been seen holding a weapon similar to the one he
used to threaten Wilson.  The Tabareses’
testimony about the size and appearance of the gun, as well as L. Tabares’s
statement that the gun recovered on her neighbor’s porch was similar to the one
Benites-Vijil used in the robbery, bolstered Wilson’s credibility and tended to
establish that Benites-Vijil had in fact used a gun to threaten her with
imminent bodily injury.  

While
the admission of testimony related to the aggravated robbery carried a risk of
irrationally impressing the jury of Benites-Vijil’s character conformity, this
impermissible inference was minimized by the trial court’s limiting
instruction.  See Lane, 933 S.W.2d at 520. 
Moreover, the testimony did not take up a significant portion of the
trial, and the amount of time used for the testimony was reasonable and not
excessive.

Accordingly,
we conclude that the trial court was within the zone of reasonable disagreement
when it ruled that the probative value of the testimony about the prior
aggravated assault was not substantially outweighed by the danger of unfair
prejudice.  We hold that the trial court
did not abuse its discretion in declining to
exclude the evidence under Rule 403, and we
overrule Benites-Vijil’s third issue.

Conclusion

          We
affirm the judgment of the trial court.

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Keyes,
Sharp, and Massengale.

Justice Sharp, concurring.

Do not publish.   Tex. R. App. P. 47.2(b).